NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4190
_____

UNITED STATES OF AMERICA,


v.


JUAN RIVERA-VELEZ,
a/k/a "Junito",
a/k/a "Two-Face"


Juan Rivera-Velez,
                                        Appellant

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 06-445)
District Judge:  Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
January 13, 2012

BEFORE:  MCKEE, Chief Judge, and FUENTES, JORDAN, Circuit Judges

(Opinion Filed: March 19, 2012)
_____

OPINION OF THE COURT
_____


FUENTES, Circuit Judge.


1

Juan Rivera-Velez was charged with conspiring to distribute more than five kilograms of cocaine and more than fifty grams of crack cocaine (Count 1); murdering Miguel Batista with a firearm on September 26, 1996, in furtherance of the drug distribution conspiracy (Count 2); attempting to murder Rafael Colon-Rodriguez ("Colon") on April 5, 2003, in order to prevent Colon from providing information to law enforcement officials about the Batista murder (Count 3); and using a firearm in connection with the attempted murder of Colon (Count 4). Trial commenced on September 29, 2009, and on November 19, 2009, the jury found Rivera-Velez guilty on all four counts. The District Court imposed sentences of life imprisonment on Counts 1 and 2, 240 months imprisonment on Count 3, and 300 months on Count 4. The sentencing judge also ordered that the life sentence on Count 2 and the 300 month sentence on Count 4 be served consecutively to each other and to the sentences on the other counts.

Rivera-Velez now raises eight grounds for appeal. For the reasons expressed below, we will affirm his conviction and sentence.[1]

**I.**

Because we write primarily for the benefit of the parties, we set forth only the facts and history that are relevant to our conclusion.

Rivera-Velez was an "enforcer" for the boss of a large drug trafficking organization, Raymond Morales. Rivera-Velez was first hired by Morales in 1993 to

---

[1] The District Court had jurisdiction over this action pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

2

provide protection while Morales was selling cocaine. He was described as Morales's "muscle" and it was noted that he typically carried a gun and "had no problem shooting . . . anybody." Appellee's Br. 10. Except when he was incarcerated from 1996 through 2001, Rivera-Velez worked continuously for Morales until 2003.

Rivera-Velez perpetrated numerous violent acts while in Morales' employ. For example, in September 1996, at Morales' direction, he shot a drug-dealing competitor, Miguel Batista, in the back of the head. Rivera-Velez also shot Rafael Colon, an individual who had knowledge of his and Morales' involvement in the Batista murder. Colon survived and identified Rivera-Velez as his assailant at trial.

Rivera-Velez raises myriad arguments on appeal, including that the District Court erred in: admitting his statements to law enforcement, denying his "Rule of Completeness" application, admitting improper propensity evidence, not directing the Government to make additional disclosures pursuant to its *Brady* obligations, dismissing a prospective juror for cause, and sentencing him to a longer term of imprisonment than the Government initially requested. Because these claims are plainly not meritorious, we will affirm.

## II.

Rivera-Velez also argues that the proofs adduced at trial varied from those alleged in the indictment, because instead of proving one single conspiracy, the evidence showed only multiple, smaller conspiracies. He believes that these multiple, small conspiracies were improperly joined into one trial and that the statute of limitations had run on some of his charges.

3

"A defendant alleging a variance between a single conspiracy charged in an indictment and the proof presented at trial must demonstrate, first, that there was such a variance and, second, that the variance prejudiced one of his substantial rights." *United States v. Quintero*, 38 F.3d 1317, 1337 (3d Cir. 1994). We have said, however, that "[i]f, viewing the evidence in the light most favorable to the government . . . a rational trier of fact could have concluded from the proof adduced at trial the existence of the single conspiracy alleged in the indictment, there was no variance." *United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir. 2007). This Court uses a three-step test to distinguish between single and multiple conspiracies.

> First, we examine whether there was a common goal among the conspirators. Second, we look at the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. Third, we examine the extent to which the participants overlap in the various dealings.

*United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) (internal quotation marks and citations omitted).

In the instant case, a rational trier of fact could have concluded that Rivera-Velez conspired with Morales and others to continuously distribute drugs during the ten year period described in the indictment. As the District Court noted, although Rivera-Velez was incarcerated from 1996 to 2001 and "didn't do anything during that period of time, . . . there's no issue that he withdrew from any conspiracy . . . . [A]s soon as he got out, he was doing what he was doing for the few years before he was sent to jail." Appellee's Br. 41 n.18. Indeed, as the District Court noted, "for members of . . . a single drug

4

conspiracy, to go to jail, stay in jail for a while, come back out and continue doing what they're doing [is] probably more the norm than . . . the exception. *Id.* at 41 n.17.

Thus, for the reasons expressed above, we will affirm Rivera-Velez's conviction and sentence.